UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher J. Earl,   Civil No. 07-156 (MJD/FLN)

    Petitioner,

v.   **REPORT AND RECOMMENDATION**

Joan Fabian, Commissioner,
Minnesota Department of Corrections,

    Respondent.

_____

Katherine M. Menendez, Assistant Federal Defender, for Petitioner.
Kimberly R. Parker, Assistant Attorney General, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on remand from the Eighth Circuit Court of Appeals for further development of the record related to Petitioner's appeal of the dismissal of his Petition for Writ of Habeas Corpus as untimely. (Doc. No. 28.) Specifically, this Court has been tasked with determining whether the State created an impediment that prevented Christopher J. Earl ("Petitioner") from filing his habeas petition such that tolling of the statute of limitations under 28 U.S.C. § 2244(d)(1)(B) should apply. Petitioner submitted a memorandum in support of his habeas petition. (Doc. No. 41.) Respondent then filed a memorandum in opposition to the application of statutory tolling. (Doc. No. 42.) Thereafter, Petitioner filed a reply memorandum in support of his petition. (Doc. No. 43.)

An evidentiary hearing was held on January 25, 2010 on the issues before the Court. Counsel for both parties appeared in person. Petitioner appeared via interactive video conference. Petitioner and Benjamin J. Butler testified at the hearing. The parties later submitted post-hearing briefs. (Doc. Nos. 49, 56.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which

1

follow, this Court recommends that tolling of the statute of limitations under 28 U.S.C. § 2244(d)(1)(B) apply in this case and that the dismissal of Petitioner's Petition for a Writ of Habeas Corpus [#1] be **REVERSED**.

## I. PROPOSED FINDINGS OF FACT

**A.     Background**

In 2004, Petitioner was convicted of ten counts of aiding and abetting first degree murder. *Earl v. Fabian*, 556 F.3d 717, 719 (8th Cir. 2009). He was sentenced to three consecutive life terms without the possibility of parole. *Id.* Following his conviction, Petitioner filed a direct appeal to the Minnesota Supreme Court. *Id.* at 720. Petitioner argued, in part, that his confession should not have been admitted at trial because law enforcement continued to question him after he invoked his right to counsel. *Id.*

For security reasons, on July 20, 2005, the Minnesota Department of Corrections ("DOC") transferred Petitioner out of state to serve his sentence in an undisclosed correctional facility in Florida. (Doc. No. 46, App. 1a-5a.) The Minnesota Supreme Court issued its decision on Petitioner's appeal on August 11, 2005, affirming Petitioner's conviction. *Earl*, 556 F.3d at 720. The same day, Petitioner's attorney, Assistant State Public Defender Benjamin J. Butler, drafted a letter to Petitioner sent in care of Jerry Clay at the Minnesota DOC, which reported the result of the appeal and indicated his intention to file a petition for rehearing.[1] (App. 45a.) The August 11, 2005 letter is date-stamped as having been "RECEIVED" on September 12, 2005 by

---

[1]The August 11, 2005 letter states, in part:
On August 11, 2005 the Minnesota Supreme Court issued an opinion in your appeal. Unfortunately, the Court upheld your convictions and sentences . . . . In effect, the Court's decision means that your appeal is over. I intend to file a petition for rehearing asking the Court to reconsider its decision, particularly the issues surrounding the statement you gave to police . . . . I understand that you have been transferred out of Minnesota. The Minnesota Department of Corrections will not release your location, so I have had the DOC forward this letter to you. If you would, please write me back and let me know where you are. That way, I can communicate directly with you regarding the petition for rehearing . . . .
(App. 45a.)

the "Bureau of Classification & Central Records." *Id.*

On August 17, 2005, Mr. Butler filed a petition for rehearing in the Minnesota Supreme Court. *Id.* at 46a. A copy of Mr. Butler's August 17, 2005 filing letter, addressed to the Clerk of Supreme Court, which notes that a copy was sent to "Christopher J. Earl" with enclosure, is also date-stamped as having been "RECEIVED" on September 12, 2005 by the "Bureau of Classification & Central Records." *Id.*

It is the Court's understanding that the "Bureau of Classification & Central Records" is located in Florida, however, the record remains silent as to what happened to the August 11, 2005 and August 17, 2005 letters after their receipt by the Florida DOC on September 12, 2005 until they were delivered to Petitioner in March of 2006. *Id.* at 1a-31a, 45a, 46a.

On September 1, 2005, the Minnesota Supreme Court denied the petition for rehearing. *State v. Earl*, 702 N.W.2d 711 (Minn. 2005), *reh'g denied* (Sept. 1, 2005). On September 6, 2005, Mr. Butler drafted a letter to Petitioner, in care of Jerry Clay, reciting the decision and explaining the finality of Petitioner's convictions.[2] (App. 47a.) Despite the parties' discovery efforts, however, there exists no signed copy of the letter in the record.

The next piece of correspondence included in the record is a letter addressed to Mr. Butler from Petitioner, dated March 6, 2006. The letter states, in part:

> I recieved [sic] your letters stating that my appeal prosses [sic] is over, but you're asking for a Rehearing. Does this mean it's over or still pending? If it is indeed over, will you please forward me all you have on my case so I may proceed with any avenues I may have left. [sic] Thank You. Please write and notify me of what's going on . . . .

*Id.* at 48a. The letter also contains Petitioner's direct contact information in Florida. *See id.*

On March 13, 2006, Mr. Butler sent a response letter directly to Petitioner at the pertinent

---

[2]The September 6, 2005 letter states, in part: "On September 1, 2005, the Minnesota Supreme Court denied the petition for rehearing that we filed in your case. Unfortunately, this means that your appeal has now ended and

3

facility address in Florida. *Id.* at 49a. The letter states:

> I write in response to your recent letter. I am not sure how much information you are lacking on your case, so I will give you a brief recap. As you know, on August 11, 2005, the Minnesota Supreme Court affirmed most of your convictions. The only convictions the Court vacated are basically inconsequential. Your sentence remains the same.
>
> On August 17, I filed a petition for rehearing, asking the Court to change or clarify its rulings on some of the issues in the case. Unfortunately, the Court denied the petition on September 1. Judgment was officially entered on October 17, 2005. At that point, your appeal process in state court ended.
>
> I have enclosed copies [sic] my petition for rehearing, which includes a copy of the Court's opinion, the order denying rehearing, and the official judgment. In your letter you asked for copies of all the information I have about your case. I can provide that to you, but gathering the materials will take a bit of time. I wanted you to have this information as soon as possible.
>
> Please contact me with any further questions. I will send you copies of everything in your case as soon as I can.

*Id.* It appears from the Florida DOC "Legal and/or Privileged Mail Log" that Petitioner received Mr. Butler's March 13, 2006 letter on March 17, 2006. *See id.* at 22a. He thus, received notice on March 17, 2006 that his petition for rehearing had been denied on September 1, 2005.

On August 25, 2006,[3] Petitioner wrote another letter to Mr. Butler, which again relayed his return address. *Id.* at 50a. The letter stated:

> . . . . I'm writing because you told me that you were sending me all of my case work, but I haven't gotten it or heard from you. It's been a few months since we talked about that.
>
> Can you please send my case work to me. [sic] At least the motion of discovery A.S.A.P., and any advise [sic] or footnotes you think might help me.
>
> Also I have requested for [sic] Minnesota law here and was denied. If you have any suggestions on obtaining such law material so I may study myself, please let me know. Anything is better than nothing.

*Id.* On August 31, 2006, Mr. Butler sent, directly to Petitioner, a letter enclosing a copy of his

---

your convictions are final . . . ." (App. 47a.)
    [3]The letter is stamped "Aug 25 2006 For Mailing _____," but the handwritten date reads "Friday 08-26." (App. 50a.) The Court notes that August 25, 2006 was a Friday.

4

"entire file." *Id.* at 51a. According to the Florida DOC mail log, Petitioner received two packages from Mr. Butler's office on September 6, 2006. *See id.* at 23a. There is no additional correspondence in the record between Petitioner and Mr. Butler.

On January 4, 2007 Earl submitted his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his constitutional rights had been violated when the State introduced his videotaped confession at trial because it had been obtained after he invoked his right to counsel. (Doc. No. 1.) The petition was filed on January 9, 2007. *Id.*

**B.     Testimony of Christopher J. Earl**

At the January 25, 2010 evidentiary hearing, Petitioner testified that, while housed in the Minnesota Correctional Facility at Oak Park Heights, he communicated with his attorney, Mr. Butler, by mail and by telephone. He stated that Mr. Butler came to visit him at the facility in Oak Park Heights as well. Mr. Butler informed him that the appeal process might take "a long time" and relayed to him that there was no way of knowing when the Minnesota Supreme Court would issue a decision. Petitioner took this to mean that he may have to wait up to "a year or two" for the result of his state court appeal.

Petitioner further testified that, although he knew that efforts may be made to transfer him for security reasons, he was not notified until he was removed from his cell at about 3:00 A.M. on July 20, 2005 that he would be relocated on that date. He stated that he did not bring Mr. Butler's address or phone number with him at that time. Petitioner could not recall precisely what items he had on his person when he arrived at the Reception Medical Center in Florida on July 20, 2005, however, he represented that the only paperwork he may have had in his possession was documentation related to an AIDS test or "religious stuff," such as a Bible and church pamphlet. He stated that he had no legal papers with him.

5

Petitioner also testified that, from the time he arrived in Florida on July 20, 2005 to early March 2006, he did not receive any mail at all, legal or personal. During that period, he spoke to no one on the telephone. He stated that he was not in contact with his family because his parents had recently vacated their home and were moving from hotel to hotel; he was, therefore, unaware of their contact information.[4] Petitioner did not realize that he was not receiving mail in a timely fashion, but rather waited for Mr. Butler to write. He testified that he "talked to Classification" about the fact that he had not received any mail and was told that his attorney "had access to write to me and that he would write to me when something happened and they would give it straight to me." He testified that he was "not worried about it at the time" because he "figured the court had not ruled."

Petitioner testified that he first learned of the Minnesota Supreme Court's initial denial of his appeal on March 5, 2006, when he received Mr. Butler's August 11, 2005 correspondence. He acknowledged that he received the August 11, 2005 letter from Mr. Butler at the same time he received a copy of the cover letter and petition for rehearing, filed on August 17, 2005. Petitioner testified that his classification officer at the time, who ultimately delivered the mail to him, represented that "that's when they received it—that's when they gave it to me."

Petitioner testified that, based upon the stamp he recognized as that of the Florida DOC, he believed that the August 11, 2005 and August 17, 2005 letters were held by the Florida DOC from their receipt on September 12, 2005 to the time they were delivered to Petitioner on March 5, 2006. (*See* App. 45a, 46a.) He reaffirmed that, between the time of his arrival in Florida and his receipt of the letters on March 5, 2006, he received no mail at all and had no telephone communication with anyone, including Mr. Butler and his former case manager in Minnesota.

---

[4]Petitioner testified that, in order to add an individual to his phone list in Florida, he would need to provide documentation to "Classification" verifying the individual's name and address in order for Classification to approve the individual as a recipient of phone calls from Petitioner.

Petitioner recalled that, after receiving the August 2005 mail from Mr. Butler, "I wrote immediately that night and sent it out through legal mail the very next day, and the date of my letter was March 6th." In his March 6, 2006 letter, Petitioner provided his direct address to Mr. Butler. At the time he wrote the letter to Mr. Butler, he had not received notice that his petition for rehearing had been denied and "had no knowledge of this whatsoever."

Petitioner acknowledged that Mr. Butler sent him a responsive letter on March 13, 2006 explaining that the petition for rehearing had been denied, which Petitioner received "a couple days later." He testified that, before his receipt of Mr. Butler's March 13, 2006 letter, he had not learned from any other source that his petition for rehearing had been denied.[5]

Petitioner further testified that he did not receive Mr. Butler's September 6, 2005 letter, which stated that the petition for rehearing was denied and his conviction was final, until he received the unsigned copy with his case file in September 2006 enclosed with Mr. Butler's August 31, 2006 letter. *See id.* at 42a, 51a. He testified that, if he remembered correctly, the case file arrived in two big envelopes.

Petitioner stated: "Once I received my stuff, I had filed [the habeas petition] as soon as I possibly could get it done and that was 110 days after I received my stuff. So, if I would have received all my stuff on time, it would have been within 365 days." He further testified that an inmate "law clerk" helped him with the preparation of his habeas petition. It was the law clerk, not Petitioner, who initially calculated the due date for the petition. Per the law clerk's calculations, Petitioner understood that the filing of his habeas petition on January 4, 2007 was timely.[6]

---

[5]The letter also stated that Mr. Butler would send Petitioner his entire case file (*see* App. 49a), which Petitioner did not receive until after sending his August 25, 2006 letter, *id.* at 50a.

[6]Petitioner also testified that he did not have access to Minnesota law in his facility in Florida and that the library denied his request for Minnesota law.

7

### C. Testimony of Benjamin J. Butler

While Petitioner testified at the January 25, 2010 hearing, Benjamin J. Butler was sequestered. After the Court received Petitioner's testimony, Mr. Butler testified about his legal representation of Petitioner, as an Assistant State Public Defender, for the duration of the appeal process. He represented that, from June 2004 through July 2005, he primarily communicated with Petitioner through the mail. He stated that, during that time, he spoke with Petitioner "at least once by phone" and that he also visited him at the correctional facility at Oak Park Heights. Mr. Butler testified that he had explained to Petitioner that the appeal process "would take a very long time," knowing that the process could take up to, or over, one calendar year. He further testified that it was the practice of the Minnesota courts to communicate "through me as counsel only;" they, therefore, did not contact Petitioner directly about his appeal.

Mr. Butler testified that, on July 29, 2004, he spoke to Petitioner's mother on the phone, who advised him that there was some chance Petitioner would be moved out of state. Subsequent to that conversation, Mr. Butler spoke with Petitioner by telephone and met with him at the correctional facility at Oak Park Heights; he, thus, "knew he hadn't been moved" at that time. On May 31, 2005, Mr. Butler presented oral argument to the Minnesota Supreme Court on Petitioner's appeal, after which he spoke to Petitioner's father on the telephone. He stated that he has no recollection of talking to Petitioner or his family after Petitioner had been relocated and that he "didn't know where [Petitioner] was" once the transfer occurred.

Mr. Butler testified that, on August 11, 2005, the Minnesota Supreme Court released its opinion, denying Petitioner's appeal. He testified that, per his general practice, he attempted to mail a copy of the appellate opinion to the client on the same day it was issued. He testified that he first checked Petitioner's demographic information listed on the Offender Locator page of the Minnesota DOC website, which represented in some capacity that Petitioner "had been moved."

The entry additionally contained a telephone contact number for "Jerry Clay." Mr. Butler testified that he called Mr. Clay, who told Mr. Butler that Petitioner had been transferred out of state. Mr. Butler testified that Mr. Clay would not disclose Petitioner's location or the reason for his transfer. Mr. Clay told Mr. Butler that he could contact Petitioner by letter, and Mr. Clay represented that he would "forward it on" to Petitioner. On the same date, Mr. Butler sent the Minnesota Supreme Court opinion and cover letter to Petitioner in care of Jerry Clay at the Minnesota DOC. (*See* App. 45a.) Mr. Butler further testified that, on August 17, 2005, he prepared the petition for rehearing, and sent a copy of the petition for rehearing to Petitioner through Mr. Clay. *See id.* at 46a.

He also testified that, on September 6, 2005, he wrote Petitioner a letter, which stated that the Minnesota Supreme Court had denied his petition for rehearing and that Petitioner's appeal was, therefore, over. Again, he sent the correspondence through Jerry Clay, not aware that the earlier letters had not reached Petitioner. Mr. Butler represented that the assistant who helped prepare the letter, Jodi Johnson, whose initials were noted as "jdj," was neither his usual secretary nor his "back up secretary." *See id.* at 47a. He testified that it was, thus, unusual that she prepared the letter on that date. He stated that the left-hand side of Petitioner's file contained an unsigned copy of the September 6, 2005 letter and acknowledged that he does not possess a signed copy of the letter.

The fact that the copy in his file is unsigned is also unusual. While he remembered writing the letter, he does "not have a memory of signing it." Still, he stated that he could not fathom that a copy of the letter would have been placed on the left side of the file without it having been sent out in the mail. He testified that some lawyers in his office did not sign their outgoing correspondence and would sometimes keep unsigned copies of their letters in their files. While his regular secretary knew that Mr. Butler had the practice of signing all of his

9

correspondence, Ms. Johnson may not have, given that she had only worked at the office "for about two weeks" at the time. Mr. Butler testified, however, that he believes the letter was mailed in the ordinary course and agreed that it is more likely than not that, while the file copy was unsigned, a signed copy went to Petitioner. He also noted that the enclosure referenced in the September 6, 2005 letter was a one-page court document, which stated that the petition for rehearing had been denied. *See id.*

Mr. Butler further testified that he received Petitioner's letter dated March 6, 2006 on March 10, 2006. *See id.* at 48a. He was surprised that Petitioner did not know at that time that his petition for rehearing had been denied. He acknowledged that he first learned of the delayed delivery of the August 11 and 17, 2005 correspondence upon his receipt of Petitioner's March 6, 2006 letter. Mr. Butler stated that he mailed his response letter of March 13, 2006 "directly to" Petitioner, in which he explained that the petition for rehearing had been denied and that Petitioner's appeal in state court had ended. *See id.* at 49a. With the letter, he sent Petitioner a copy of the order denying the petition and believes that he "also sent him a copy of the official judgment from the Clerk of Appellate Courts."

Mr. Butler also represented that, on August 31, 2006, he sent Petitioner "a copy of every piece of paper" in his file.[7] *See id.* at 51a. He stated that he did so, in part, because "it was clear there was some problem with him receiving correspondence from me." He stated: "I remember specifically that I did not send a copy until the end of August 2006." When asked the reason for the delay in sending Petitioner his case file after Petitioner's March 6, 2006 request, Mr. Butler acknowledged that he may have forgotten or simply not "gotten around to it" until then. He did

---

[7]Mr. Butler additionally testified that the October 20, 2005 "RECEIVED" stamp on the copy of the judgment is a stamp from his office. (*See* App. 52a.) He stated that he did not send the document to Petitioner immediately upon receipt and would have only sent Petitioner a copy when he sent the entire file.

recognize that "there was a lengthy delay" in sending Petitioner his case file.[8]

**D.     Factual Conclusions**

The Court has been tasked with making findings in response to the following questions of fact presented on remand: 1) What mechanism did the State of Minnesota rely on to send notice to Petitioner? 2) What actually happened to delay notice? 3) When did Petitioner actually receive notice that his judgment had become final?

**1.   What mechanism did the State of Minnesota rely on to send notice to Petitioner?**

The Court finds that the State of Minnesota relied upon the United States mail to send notice to Petitioner's attorney, Benjamin J. Butler. The Court finds that Petitioner was notified only through his attorney and did not receive notice in any other way.

**2.   What actually happened to delay notice?**

Despite diligent investigation of this issue, the Court finds that the facts and circumstances of the delay remain unknown. The Court finds that the August 11, 2005 and August 17, 2005 letters were received by the Florida DOC's "Bureau of Classification & Central Records" on September 12, 2005. (App. 1a-31a, 45a, 46a.) It remains unclear, however, what happened to the letters between their arrival in Florida on September 12, 2005 and March 5, 2006, when the letters were ultimately delivered to Petitioner by his classification officer.

Because it cannot be determined if, in fact, the September 6, 2005 letter from Mr. Butler was ever mailed, the Court cannot conclude that the September 6, 2005 letter was detained by the Florida DOC, unlike the correspondence dated August 11 and 17, 2005. Still, the Court finds that the state-created delay in providing Petitioner with access to legal mail resulted in delayed notice

---

[8]He further explained that, in his practice, support staff photocopies the documents in the "actual file" kept by Mr. Butler for the client.

of the status of his appeal from September 12, 2005 to March 5, 2006.

### 3. When did Petitioner actually receive notice that his judgment had become final?

The Court finds Petitioner's testimony credible that he ultimately received notice that his judgment had become final once he received Mr. Butler's March 13, 2006 letter, which explained that the petition for rehearing had been denied. *Id.* at 49a. Petitioner received Mr. Butler's letter on March 17, 2006. *See id.* at 22a.

### 4. Chronology of Significant Dates

| August 11, 2005 | Conviction affirmed; Letter from Mr. Butler stating his intention to file a petition for rehearing sent to Petitioner in care of Jerry Clay (Minnesota DOC) |
| --- | --- |
| August 17, 2005 | Petition for rehearing filed; Letter from Mr. Butler sent to Clerk of Court filing petition for rehearing (cc: Petitioner w/ enclosure, in care of Jerry Clay) |
| September 1, 2005 | Petition for rehearing denied by Minnesota Supreme Court |
| September 6, 2005 | Mr. Butler drafts letter to Petitioner stating rehearing denied, explaining conviction final and enclosing one page court document stating that petition for rehearing had been denied (original letter never received by Petitioner) |
| September 12, 2005 | 8/11/05 and 8/17/05 letters date-stamped "received" by the "Bureau of Classification & Central Records" (Florida DOC) |
| October 17, 2005 | Final judgment entered by Minnesota Supreme Court |
| November 30, 2005 | AEDPA one-year limitation begins to run (end of period to file writ of certiorari w/ U.S. Supreme Court) if tolling does not apply |
| March 5, 2006 | 8/11/05 letter and 8/17/05 letter delivered to Petitioner in Florida |
| March 6, 2006 | Petitioner writes letter to Mr. Butler (and includes return address) acknowledging receipt of letters and requesting case file |
| March 13, 2006 | Response letter to Petitioner (sent directly to Florida address) from Mr. Butler explaining the denial of the petition for rehearing |

12

| March 17, 2006 | Petitioner receives 3/13/06 letter from Mr. Butler stating petition for rehearing denied; AEDPA one-year limitation beings to run if tolling applies under 28 U.S.C § 2244(d)(1)(B) |
| --- | --- |
| August 25, 2006 | Petitioner writes letter to Mr. Butler stating that he has not received his case file |
| August 31, 2006 | Mr. Butler mails Petitioner a copy of entire case file |
| September 6, 2006 | Petitioner receives case file and sees (unsigned) copy of 9/6/05 letter for first time |
| November 30, 2006 | AEDPA statute of limitations expires if tolling does not apply |
| January 4, 2007 | Petitioner mails habeas petition for filing |
| March 17, 2007 | AEDPA statute of limitations expires if statutory tolling applies under 28 U.S.C. § 2244(d)(1)(B) |

## II. CONCLUSIONS OF LAW

### A.     Statutory Tolling Pursuant to 28 U.S.C. § 2244(d)(1)(B)

In the instant case, the only issues before the Court on remand relate to the applicability of statutory tolling under 28 U.S.C. § 2244(d)(1)(B). 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Generally, a state prisoner seeking habeas corpus relief from a state court conviction or sentence must file his petition within one year after the prisoner's judgment of conviction "became final by the conclusion of direct review or the expiration of time for seeking such review." *Id*. § 2244(d)(1)(A). The AEDPA statute provides, however, "that the commencement of the limitations period for timely filing a habeas petition may sometimes extend beyond the date on which the state judgment becomes final." *Earl v. Fabian,* 556 F.3d 717, 725 (8th Cir. 2009). For instance, the deadline may be modified pursuant to the statute if a state-created impediment, which violates the Constitution or laws of the United States, prevents the applicant from filing his petition. *See* 28 U.S.C. § 2244(d)(1)(B).

**B.  Because state action created an impediment in violation of the Constitution of the United States, which prevented Petitioner from filing his petition, statutory tolling should apply pursuant to 28 U.S.C. § 2244(d)(1)(B).**

The ultimate issue before the Court on remand is "to determine whether state action created an impediment in violation of the Constitution or laws of the United States which prevented Earl from filing his petition." *Earl,* 556 F.3d at 728.

The parties agree that Petitioner bears the burden of establishing that "the state created an impediment to the filing of his petition by action in violation of the Constitution or laws of the United States" and that the state-created impediment prevented him from filing his petition for a writ of habeas corpus. *Id.* at 726. Where such a showing is made, the one-year AEDPA limitations period begins to run on the date on which the impediment is removed. *Id.*

**1. The delay was state-created.**

In order to be entitled to statutory tolling, Petitioner must demonstrate that the impediment to filing his habeas petition was created by state action. Petitioner alleges that the

State failed to timely deliver his legal mail, including notice that the judgment in his case had become final.

The delayed delivery of Petitioner's legal mail in the instant case was state-created. As noted by the Eighth Circuit:

> After Earl's conviction, but before his state appeal process concluded, he was involuntarily transferred from Minnesota to an undisclosed correctional facility in Florida. Thereafter, the state refused to inform Earl's attorney where he could be reached and thus deprived counsel of the ability to contact him directly. Having rendered Earl incommunicado, the state assumed the responsibility to transmit information about his case and counsel's correspondence to him in a timely fashion.

*Id* at 724. Because the Minnesota DOC would not disclose Petitioner's location, from August 2005 to March 2006, Mr. Butler was forced to rely on Jerry Clay's assurance that he would forward correspondence to Petitioner. *See id.* at 720. Since Petitioner's "March 6 letter included his return address, counsel thereafter no longer needed to depend on the state to transmit his correspondence." *Id.*

Whether the delay was created by the State of Minnesota or the State of Florida is irrelevant. It appears from the record, however, that the delay in delivery of the August 11, 2005 and August 17, 2005 legal correspondence is attributable to the Florida DOC. Those letters were date-stamped as "received" by the Bureau of Classifications in Florida on September 12, 2005. The pivotal letter at issue, however, is that dated September 6, 2005, which explains the denial of the petition for rehearing on September 1, 2005, which ultimately would have started the one-year clock within which to file, absent a state-created impediment in violation of the Constitution. Still, Petitioner may never have received the original letter by mail and knew of its existence only upon receipt of his complete file on September 6, 2006.[9]

---

[9] If the ultimate "impediment" to filing his petition is attributed to Mr. Butler or his staff in failing to send Petitioner the September 6, 2005 letter, however, the fault does not fall with the State, as Mr. Butler represented Petitioner as an Assistant State Public Defender, not acting under color of state law as counsel to Petitioner. *See Polk*

15

Here, Petitioner was not notified that his petition for rehearing had been denied until he received Mr. Butler's March 13, 2006 letter, which provided a summary of the events on appeal and the denial of the petition for rehearing. (*See* App. 49a.) Petitioner, therefore, did not receive notice sufficient to start the statutory one-year countdown until March 17, 2006. *See id.* at 22a.

The delay in Petitioner's receipt of notice was significant. *See Earl,* 556 F.3d at 723 ("We agree that a significant state created delay in providing a prisoner with notice that his state judgment of conviction has become final amounts to an extraordinary circumstance beyond a prisoner's control . . . ."). Almost seven months passed before Petitioner received Mr. Butler's March 13, 2006 letter and learned that his petition for rehearing had been denied by the Minnesota Supreme Court on September 1, 2005.

Although the record remains unclear as to what actually happened to the original September 6, 2005 letter, given the Florida DOC's failure to deliver to Petitioner legal mail it had received on September 12, 2005 until March 5, 2006 (a delay of almost six months), it is more likely than not that Mr. Butler mailed the letter to Petitioner in the ordinary course and that the letter was delivered to Petitioner by neither the Minnesota nor the Florida DOC. Even if, through the fault of Mr. Butler, the September 5, 2006 letter was never mailed to Petitioner, the Court finds that the Florida DOC is nonetheless responsible for a significant delay in Petitioner's receipt of notice of the status of his state court appeal. Because the State of Florida, through the DOC, failed to deliver Petitioner's legal mail dated August 11 and 17, 2005, Petitioner was unaware that his conviction was affirmed and that his attorney intended to file, and subsequently did file, a petition for rehearing. If Petitioner had timely received those letters, he would have been able to respond to Mr. Butler promptly and provide him with his return address as early as

---

*County v. Dodson,* 454 U.S. 312, 324-25 (1981) ("[A] public defender does not act under color of state law when counsel to a defendant in a criminal proceeding"); *Finch v. Miller,* 491 F.3d 424, 427 (8th Cir. 2007) ("An impediment to filing, however, must be created by *state action.*").

16

September 2005 as opposed to March 2006. The State was, therefore, primarily responsible for Petitioner's lack of knowledge of the status—and ultimate loss—of his appeal.

Thus, the Court finds that the delay in delivery of notice to Petitioner was state-created.

### 2. The impediment violated the United States Constitution.

The Court must determine whether the failure to timely notify Petitioner of the status of his appeal to the Minnesota Supreme Court amounted to a denial of his constitutional right of access to the courts–a "fact intensive" inquiry. *See Earl,* 556 F.3d at 726.

Before reviewing the instant case on appeal, the Eighth Circuit had not considered "whether a state created delay in providing a prisoner with notice that his judgment is final can amount to an impediment in violation of the Constitution or laws of the United States such that statutory tolling could be warranted for a petition subject to AEDPA." *Id.* Without defining the full contours of the term "impediment," the panel concluded "that the delay alleged by Earl, if credible, could possibly amount to a state impediment under § 2244(d)(1)(B)" and noted that "lack of notice that a state judgment of conviction has become final could be an impediment that prevents a prisoner from filing a petition depending on the particular circumstances of the case." *Id.*

Although "a claimant typically bears the burden of proving that the defendants intentionally restricted his access to the courts" in order to prevail under the First Amendment, due process also "requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Id.* (citations omitted).

Here, the Court finds Petitioner's testimony that he did not receive notice that his petition for rehearing had been denied until he received Mr. Butler's March 13, 2006 letter to be credible. He, therefore, was "effectively deprived of a meaningful opportunity to be heard on collateral

17

review for a period of almost seven months, hardly a de minimis deprivation given the AEDPA one year limitations period." *Id.* at 727.

Thus, the Court concludes that the State's failure to deliver Petitioner's legal mail in a timely fashion, and its resultant failure to notify Petitioner of the status of his appeal, constitutes a violation of his constitutional right of access to the courts.

### 3. The impediment prevented Petitioner from filing his petition.

Under 28 U.S.C. § 2244(d)(1)(B) of the AEDPA, "whatever constitutes an impediment must prevent a prisoner from filing his petition." *Earl,* 556 F.3d at 726. "Whether an impediment "prevented" the filing of a habeas claim is also a distinct fact intensive issue that has been the basis for denying 2244(d)(1)(B) relief." *Id.*

Here, the delayed delivery of legal mail by the State of Florida (by way of the DOC), prevented Petitioner from filing his petition until at least March 17, 2006, when he finally received notice from his attorney, Mr. Butler, that his petition for rehearing had been denied. (*See* App. 22a, 49a.) The State's conduct can fairly be said to have been the obstacle that prevented Petitioner from filing for federal habeas relief for almost seven months after the denial of the petition for rehearing. *Cf. Wood v. Spencer*, 487 F.3d 1, 8 (1st Cir. 2007).

Therefore, the Court finds that the DOC's delay in the delivery of legal mail to Petitioner, including notice of the status of his appeal, constituted a state-created impediment to his ability to file a habeas petition until almost seven months after his petition for rehearing had been denied.

### 4. 28 U.S.C. § 2244(d)(1)(B) does not contain an unwritten diligence requirement.

> To interpret § 2244(d)(1)(B) to mean that a petitioner who can establish that a state created impediment has prevented him from filing must file in less than one year after that impediment has been removed would deprive him of the one year generally available under AEDPA. Such a conclusion would be inconsistent with the one year available under § 2244(d)(1)(D), impose a greater burden on a § 2244(d)(1)(B) petitioner even though that burden is not written in the statute, and

18

seemingly defeat the purpose of § 2244(d)(1)(B) which is to protect the habeas rights of a petitioner suffering from injurious state action.

*Earl,* 556 F.3d at 727-28.

Incorporating the Eighth Circuit's prior analysis in this case, the Court concludes that 28 U.S.C. § 2244(d)(1)(B) does not require diligence on the part of the applicant in order for tolling of the limitations period to apply. *See id.*

Because state action created an impediment in violation of the Constitution of the United States, which prevented Petitioner from filing his habeas petition until at least March 17, 2006, the Court finds that statutory tolling should apply pursuant to 28 U.S.C. § 2244(d)(1)(B). Thus, the statute of limitations within which to timely file a petition for a writ of habeas corpus did not expire until March 17, 2007. Therefore, based upon the evidence now before the Court, the habeas petition submitted by Petitioner on January 4, 2007 (Doc. No. 1) was timely filed and should not have been dismissed.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the dismissal of Petitioner's Petition for a Writ of Habeas Corpus [#1] be **REVERSED**, that tolling of the statute of limitations under 28 U.S.C. § 2244(d)(1)(B) should apply, and that Petitioner be allowed to proceed with his petition as timely filed.

The Court recommends that the above findings and conclusions be certified to the Clerk of the Eighth Circuit Court of Appeals.

DATED: April 12, 2010  *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before April 26, 2010, written objections

which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by April 26, 2010, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.